UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   25-CR-20065-ALTONAGA

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

KLEBER LEONARDO DELGADO-MERO

     Defendant.

_____/

## SENTENCING MEMORANDUM

**COMES NOW,** the Defendant, KLEBER LEONARDO DELGADO-MERO, through undersigned attorney, and respectfully STATES and PRAYS as follows.

### I.      INTRODUCTION

1.      Mr. Delgado-Mero was the subject of a two-count Indictment charging him with conspiracy to possess with intent to distribute 5 kilos or more of a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and with possession with intent to distribute 5 kilos or more of a detectable amount of cocaine while on board a vessel subject to the jurisdiction of the United States (Count Two).

2.      On June 9, 2025 he pled guilty to Count One of the Indictment.

3.      Sentence is set for August 25, 2025. We have received and reviewed the PSI (DE No.127) in its entirety and timely filed objections on  August 4, 2025 (DE No. 137). We have also reviewed the Government's Response to our Objections to the PSR (DE No. 149) as well as the PSR's Final Addendum (DE No. 156-1). We renew our objections to the USPO's determination regarding Mr. Delgado-Mero's role in the offense and the adjustment for obstruction of justice.

4.      After reviewing the Indictment,  the Draft Disclosure of the Presentence Investigation Report ("PSI"), the U.S. Sentencing Guidelines ("Guidelines"),  and other documents in this case, we are respectfully requesting that the court either (a) grant our minimal-role objection as outlined in our Objections to the PSI and this Sentencing Memorandum or (b) conduct a downward variance based on 3553 factors, and sentence Mr. Delgado-Mero to 46 months of imprisonment.

## II.  SENTENCE REQUEST

### A. Guideline Calculations

According to the PSR, based on the controlled substance amount of the offense of conviction of at least 450 kilograms of cocaine, the Base Offense Level ("BOL") is 38 pursuant to USSG § 2D1.1(c)(1). Nonetheless, because he qualifies for a 4-level minimal role reduction, as per the most recent amendment to U.S.S.G. 2D1.1(e)(2)(B) in relation to the application of 3B1.2, set to take effect in November 2025, his base offense level is capped at 30.

Mr. Delgado-Mero's timely acceptance of responsibility results in a 3-level reduction, bringing his offense level down to 27. Because Mr. Delgado-Mero complied with all criteria set forth in U.S.S.G. §5C1.2 he is entitled to a further two-level reduction. Furthermore, as he has no prior criminal history, he is entitled to a further two-level reduction pursuant to Guideline 4C1.1. Contrary to what the USPO has recommended, his conduct in the offense does not constitute obstruction of justice and he should not receive that two-level enhancement. His total offense level would be 23. This combined with a Criminal History Category of I, results in a guideline range of 46-57 months of imprisonment.

We reiterate our objections to the PSI not granting Mr. Marin Mero a minimal role adjustment as well as determining that he warrants an enhancement for obstruction of justice.

### III. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

#### A. The Offense and Personal History and Background

Among Section 3553 factors that a court may take into consideration are the nature and circumstances of the offense and the history and characteristics of the defendant. We submit the following information for the court's consideration.

1.      Nature and Circumstances of the Offense

Mr. Delgado-Mero has accepted responsibility for his part in the offense. He was not the owner of the drugs. He was not a leader or organizer of this conspiracy and therefore was not subjected to a role enhancement. His lack of criminal history, as reflected in the PSI is of importance. Of equal importance is the fact that his dire financial situation in Ecuador was the sole reason he accepted to go on the trip.

Mitigating Role

In 2015 the U.S. Sentencing Commission amended the section relating to mitigating role in the offense in order to provide additional guidelines to sentencing courts in determining whether a mitigating role adjustment would apply. U.S.S.G. Amend. 794. This amendment was a result of the Commission's review of cases involving low-level offenders. "Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended" *Id.* The Commission wanted to ensure courts were not discouraged from applying a role reduction for low-level drug offenders such as Mr. Delgado-Mero.

Mr. Delgado-Mero's role in the offense was that of a courier. A stated in *United States v. Maciel*, 2025 WL 1822905 (S.D. Cal June 30, 2025), the U.S. Sentencing Guidelines do not provide a definition for a courier. Nonetheless, the court in Maciel, after considering 9th Circuit case law, transcripts of hearings of the

4

Sentencing Commission concerning the proposed amendments, and other materials, agreed that someone whose only function is to transport drugs is a "courier", **regardless of the amount of drugs or the fact that they were transported across an international border**.

Despite the Commission's intent with the 2015 amendment, courts were rarely granting a mitigating role reduction in cases where it should be considered, many times due to the substantial amounts of drugs involved, often resulting in draconian sentences for individuals minimally involved in the offense. The Commission has now approved an additional amendment to the guideline relating to mitigating role which will take effect in November 1, 2025.

USSG §2D1.1(e)- Special Instructions- was amended to include paragraph 2- "Application of §3B1.2 (Mitigating Role) to §2D1.1 Cases". It provides in subsection (2)(A) that the first step is to determine whether an adjustment for mitigating role applies. Subsection (2)(B) states  that an adjustment for mitigating role "is generally warranted if the defendant's primary role in the offense was performing a low-level trafficking function". Subsection (2)(B)(i) further states that an adjustment for minimal role is generally warranted "if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as a courier…"

Application Note 4 of Guideline §3B1.2 establishes that in determining whether a minimal role reduction is warranted "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."

There can be no question that Mr. Delgado-Mero was merely a courier. He had no knowledge of the details of the offense, the identity of the participants, the source of the drugs or their ultimate destination, the preparation of the drugs and subsequent placement in the vessel or the route taken. He also had no control over the vessel and never acted as captain. He is thus not responsible for the attempt by others to evade the authorities. He was paid a mere $500.00. The court in *Maciel* granted a courier a 4-level mitigating role adjustment. In regard to the amendment, it stated that "the purpose behind the amendment is for courts to more frequently apply adjustments under §3B1.2(a) (minimal role) and grant defendants who are only couriers a 4-level reduction". *Id.*

As further justification for a mitigating role in the offense, we bring to light the fact that the Department of Justice has issued a Memorandum regarding prosecution of drug trafficking cases. The memo is titled "Total Elimination of Cartels and Transnational Criminal Organizations." In said memorandum, DOJ clearly establishes that in cases such as the one at hand, non-prosecution should be considered in favor of removal from the United States.

On the other hand, under the total-elimination policy, it will often be prudent to pursue removal from the United States of a low-level investigative target without immigration status, rather than incurring the time and resource costs associated with criminal prosecution. Similarly, because the Department is working toward elimination of these threats from the homeland, it will rarely be consistent with this policy to pursue foreign arrests and extraditions of targets who may be eligible for safety-valve relief or minor role adjustments. This includes foreign arrests of low level narcotics offenders pursuant to the Maritime Drug Law Enforcement Act under Chapter 705 of Title 46. Resources currently devoted to such arrests, including at the Maritime Unit of the Narcotics and Dangerous Drug Section, shall be redirected toward investigations involving inspections, interdictions, seizures, and forfeitures of commercial shipping vessels transporting narcotics, precursor chemicals, petroleum products, and/or human trafficking and smuggling victims. These activities support the operations of Cartels and TCOs, often in violation of U.S. sanctions.

2.       History and Characteristics of the Defendant

Highly relevant and essential to the imposition of a sentence is the possession of the fullest information possible concerning the defendant's history and characteristics. *Pepper v. United States*, 131 US 1229 (2011) citing *Williams v. New York*, 337 U.S 241, 246-247(1949). As 18 USC 3661 states "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence".

Kleber Leonardo Delgado-Mero is a citizen of Ecuador, having been born in the town of Jaramijo. He and his six siblings grew up in extreme poverty. The family lived with his grandparents in a home with one open space where everyone slept on the floor. Below a picture of the home where eleven members of a family shared space.



Mr. Delgado-Mero and his siblings often went hungry. Hunger and malnutrition were an everyday occurrence. Obtaining food even if for one or two meals a day was the priority. Therefore, the children for the most part did not attend school and worked from an early age to aid the family.

Jaramijo is a town in the municipality of Manabi, on the Pacific coast of Ecuador. It is an impoverished town that subsists mostly on fishing. Mr. Delgado-

Mero, as most young men of Jaramijo, became a full-time fisherman at the age of 16, around the same time that he became a father for the first time. He never looked back and never complained. He understood it to be his duty.

His love of fishing, unfortunately, did not result in stable income. Many factors outside his control such as climate made it difficult for him to provide for his family. As he approached adulthood, his responsibilities increased after marrying Yomaira Mero-Marin and becoming a father to four children. He continued fishing as that is all he had ever known, but now the pressure of caring for his children made matters more pressing.

Further exacerbating this situation was his daughter and youngest son's health. His son suffers from seizures which require medication. His daughter has pulmonary issues for which she required surgery when she was younger. The medical costs have added financial stress to an already dire living situation. Just as he did, his two oldest sons, mere adolescents, work as fishermen. The family now lives in government provided housing. They are unsure if they are expected to pay the costs of this housing. Even though this home is a slight step above where he grew up, it is by no means luxurious. Mr. Delgado-Mero and his family continues to live in extreme poverty.



Mr. Delgado-Mero maintains a close relationship with his family. They are all aware of his current predicament and remain supportive. Mr. Delgado-Mero longs to be reunited with his family. He aches especially for his children. By all accounts he has been a good, involved, and devoted father to his children. They have been his main concern and purpose. It is precisely because of them that he became involved in this offense. He was lured by quick money that would enable him to provide for his family during a period in which he had been unemployed, unable to secure fishing jobs. Things obviously did not turn out as he expected and now he is facing a prolonged period of separation from his children and when he will be unable to

provide for them. He recognizes  that his decision has left his family in a worse predicament. Below a picture of Mr. Delgado-Mero's family in Ecuador.





Mr. Delgado-Mero faces years of separation from his children followed by ICE detainment prior to being deported. We ask that the court take this into consideration upon imposition of sentence. He wants to return to Ecuador and his life as a father, son, sibling, and fisherman.

> ***B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or other Corrective Treatment in the Most Effective Manner.***

1. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense

A sentence of  46 months will achieve this purpose. This is a non-violent offense with no victims or firearms. It is his first offense. He deeply regrets his involvement in the offense and intends to never again incur this type of conduct. He was not a leader, manager, or organizer. He had no control over the quantity of drugs with which he was provided nor did he over the vessel in which he was traveling. Mr. Delgado-Mero was no more than a courier. His participation in the offense was on a need-to-know basis, as is always the case with couriers.

Mr. Delgado-Mero has shown remorse. He has accepted he will have to serve time for his participation in the offense and has at the same time, through his full compliance, shown he will follow the rules both during imprisonment and later, under supervised release.

2. To Afford Adequate Deterrence to Criminal Conduct

There is no proven correlation between the length of imprisonment and deterrence of criminal conduct. We note that we have found no empirical evidence that supports the belief that longer terms of imprisonment have more or less of a personal deterrent value than shorter terms. Research on specific deterrence suggests that even offenders who receive harsher penalties, like long terms of imprisonment, are not appreciably deterred. In fact, research has suggested that prison does not

necessarily reduce recidivism. Thus, longer terms of imprisonment cannot be justified on deterrence.[1]

Mr. Delgado-Mero is deeply affected by the separation from his family during incarceration. He wants to be free as soon as possible and be the man he knows he can be. He is also committed to being a law-abiding citizen to provide a good example to his children.

Mr. Delgado-Mero is willing and eager to participate in any drug treatment program that the court deems appropriate. He wants to make the most of his time during incarceration and avow himself of any courses the BOP offers that would be of value to him.

Unwanted sentence disparities.

As further justification for our request for a lower sentence than that suggested by the guidelines is the issue of avoiding sentence disparities 18 U.S.C. §3553(a)(6). Mr. Delgado-Mero submits for the court's consideration the following Title 46 cases in this district which reflect a trend of downward variances, resulting in a sentencing range of 57 to 84 months of imprisonment.

---

[1] D. Nagin; *Deterrence in the Twenty-First Century*, Crime and Justice 42 (2013): 199-263.

- 22-20161-Gayles- Title 46 case with approximately 500 kilograms of cocaine. A minor role reduction was granted and all 4 defendants were sentenced to 57 months.

- 22-20350-Altman-Title 46 case involving 972 kilos of cocaine. All three defendants received a sentence of 77 months.

- 23-20163-Altonaga- Title 46 case where approximately 936 kilos of cocaine were recuperated. The defendants were sentenced to 78 months.

- 23-20162-KMW- Title 46 case with 426 kilos of cocaine. Becerra Astudillo was sentenced to 51 months.

- 23-20184-Altman- Title 46 case involving 718 kilos of cocaine. Both defendants sentenced to 84 months.

- 23-20186-Martinez-Title 46 case involving 663 kilos of cocaine. Both defendants sentenced to 84 months even after attempting to flee.

- 23-20299-Bloom- Title 46 case involving 1,910 kilos of cocaine. All 5 individuals, other than the master, sentenced to 75 months.

- 23-20334-Ruiz- Title 46 case involving 1,230 kilos of cocaine. All defendants sentenced to 60 months.

- 23-20172-Becerra- Title 46 case involving 1,147 kilos of cocaine. All three defendants sentenced to 78 months.

Most of these sentences were a result of variances applied by the Court. All occurred prior to  the Sentencing Guideline Amendments that will take effect on November 1, 2025, and which clearly establish that a courier is generally entitled to a four-level reduction for minimal participant.

Finally, we ask the court to credit the time from the moment he was detained aboard the vessel on January 23, 2025 before being transported to the Middle District of Florida and eventually to the Southern District of Florida, and that language to that effect be included in the judgment.

### IV. CONCLUSION

Mr. Delgado-Mero is deeply remorseful for his actions. Recidivism in his case is low. He has a supportive family and no prior criminal history. Above all, he yearns for the opportunity to return home to continue to be a good father and a positive role model.

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of the instant Memorandum and consider the information herein contained at the time of sentencing.

**RESPECTFULLY SUBMITTED**.

On this day, August 19, 2025

By:  s/Maria T. Arsuaga Byrne
Maria T. Arsuaga, P.A.
251 Valencia Ave. #141395
Coral Gables, FL 33114-1395
Tel. 305-281-7889
maritere.arsuaga@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY certify that on this date I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and it has been served on all counsel of record via CM/ECF transmission.

s/*Maria Arsuaga Byrne*

Maria Arsuaga Byrne